**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| AUSTIN TINSMAN, | : | CIVIL ACTION |
| Plaintiff, | : | NO. |
| | : | |
| -vs- | : | |
| | : | |
| MITRA QSR HOLDINGS, LLC, | : | PLAINTIFF REQUESTS |
| MITRA QSR KNE, LLC, | : | A TRIAL BY JURY |
| KENTUCKY FRIED CHICKEN d/b/a | : | |
| KFC, YUM BRANDS, INC., | : | |
| KFC U.S. PROPERTIES INC. d/b/a | : | |
| KENTUCKY FRIED CHICKEN | : | |
| SOPHIA (last name unknown) | : | |
| (individually) and KAMRYN KAHN | : | |
| (individually) | : | |
| Defendants. | : | |

Plaintiff, Austin Tinsman, by and through undersigned counsel hereby files this Civil Action Complaint against Defendants, Mitra QSR Holdings, LLC, Mitra QSR KNE, LLC, Kentucky Fried Chicken d/b/a KFC, Yum Brands, Inc., KFC U.S. Properties Inc. d/b/a Kentucky Fried Chicken, Sophia (last name unknown) (individually) and Kamryn Kahn (individually) (collectively "Defendants") and upon information and belief avers the following:

PARTIES

1.    Plaintiff, Austin Tinsman ("Mr. Tinsman" or "Plaintiff") is an adult individual who resides in the Commonwealth of Pennsylvania.

2.    Defendant, Mitra QSR Holdings, LLC is business organization which is licensed to and regularly transacts business in the Commonwealth of Pennsylvania with offices for the purposes of service at 18900 Dallas Parkway, Suite 125, Dallas, Texas, 75287.

3.    Defendant, Mitra QSR KNE, LLC, is business organization which is licensed to and

regularly transacts business in the Commonwealth of Pennsylvania with offices for the purposes of service at 18900 Dallas Parkway, Suite 125, Dallas, Texas, 75287.

4.    Defendant, Kentucky Fried Chicken d/b/a KFC is business organization which is licensed to and regularly transacts business in the Commonwealth of Pennsylvania with offices for the purposes of service at 7250 Dallas Parkway, 8th Floor, Suite 800, Plano, TX 75024.

5.    Defendant, Yum Brands, Inc., is a business organization which is licensed to and regularly transacts business in the Commonwealth of Pennsylvania with offices for the purposes of correspondence at 7250 Dallas Parkway, 8th Floor, Suite 800, Plano, TX 75024.

6.    Defendant, KFC U.S. Properties Inc. d/b/a Kentucky Fried Chicken is a business organization which is licensed to and regularly transacts business in the Commonwealth of Pennsylvania with offices for the purposes of correspondence at 7250 Dallas Parkway, 8th Floor, Suite 800, Plano, TX 75024.

7.    Defendant, Sophia (last name unknown) (individually) is an adult individual who resides in the Commonwealth of Pennsylvania with a business address for the purposes of service at 527 Franklin Mills Circle, Philadelphia, Pennsylvania 19154.

8.    Defendant, Kamryn Kahn (individually) is an adult individual who resides in the Commonwealth of Pennsylvania with a business address for the purposes of service at 527 Franklin Mills Circle, Philadelphia, Pennsylvania 19154.

9.    At all times relevant to this civil action, Plaintiff, Austin Tinsman was employed by Defendants Mitra QSR Holdings, LLC, Mitra QSR KNE, LLC, Kentucky Fried Chicken d/b/a KFC, Yum Brands, Inc., KFC U.S. Properties Inc. d/b/a Kentucky Fried Chicken who were Plaintiff, Austin Tinsman's joint and sole employers.  Plaintiff, Austin Tinsman was hired by Mitra QSR Holdings, LLC and Mitra QSR KNE, LLC, however, Plaintiff,

Austin Tinsman was required to hold himself out to the public as an employee of KFC and Kentucky Fried Chicken, which is a division of Yum Brands, Inc.

10. At all times material to this civil action, Plaintiff, Austin Tinsman was qualified for his employment and possessed the education, skill and experience required to execute her duties as a joint employee for Defendants.

11. The individual Defendants named above were Plaintiff, Austin Tinsman's supervisors and held supervisory authority over Plaintiff, Austin Tinsman.

## NATURE OF THE CASE

12. Plaintiff complains pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub. L. No. 102-166 ("Title VII")), 42 USC Section 1981, the Pennsylvania Human Relations Act, as amended, 43 P.S. §§ 951, *et. seq.* ("PHRA"), and under the laws of the Commonwealth of Pennsylvania, and under the Philadelphia Fair Practices Ordinance, § 9-1100 et. seq. ("PFPO"), and seeks damages to redress injuries Plaintiff suffered as a result of discrimination, harassment, hostile work environment, disparate treatment, and retaliation for opposing and reporting Defendants unlawful conduct and comments, which ultimately led to Plaintiff, Austin Tinsman's unlawful termination by her employer.

## JURISDICTION AND VENUE

13. This action involves a Question of Federal Law under Title VII of the Civil Rights Act of 1964.

14. The honorable Court also has supplemental jurisdiction over the Commonwealth law and Municipal Causes of Action.

15.     Venue is proper in the Eastern District of Pennsylvania as Plaintiff was employed by Defendants and worked in the City of Philadelphia where the discrimination complained of occurred.

16.     On or about November 26, 2018, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") against Defendants as set forth herein. Plaintiff's Charge of Discrimination was dual filed with the Pennsylvania Human Relations Commission and the Philadelphia Commission on Human Relations.

17.     On or about July 10, 2019, the EEOC issued Plaintiff a Dismissal and Notice of Rights.

18.     This action is commenced within ninety (90) days of receipt of the Dismissal and Notice of Rights.

## MATERIAL FACTS

19.     Plaintiff, Austin Tinsman began his employment for Defendants sometime around September 17, 2018.  Plaintiff, Austin Tinsman interviewed with Defendant, Kamryn Kahn and upon hire, began the first job in Austin's life as a Front-End Cashier and Packer.

20.     During his interview, Plaintiff, Austin Tinsman discussed the fact that he was in the process of transitioning from female to male with Defendant, Kamryn Kahn.

21.     Plaintiff, Austin Tinsman believed that the discussion with Defendant, Kamryn Kahn about his transitioning from female to male would remain private and confidential, however, on the first day of employment, Defendant, Kamryn Kahn had informed all of Plaintiff, Austin Tinsman's coworkers that Plaintiff, Austin Tinsman was a transitioning female to male and that Plaintiff, Austin Tinsman was born with the name Alayna.

22.     Accordingly, from the onset of his employment, Plaintiff, Austin Tinsman's coworkers all called Plaintiff, Austin Tinsman by his deadname, Alayna.

23.     Plaintiff, Austin Tinsman filed a Charge of Discrimination with the Equal Employment Opportunity Commission sometime around November 26, 2019

24.     Since filing the Charge of Discrimination, the harassment, bullying, and abusive conduct to which Plaintiff has been subjected has increased and escalated.

25.     During his employment for Defendants, Plaintiff, Austin Tinsman was subjected to a campaign of harassment, discrimination and retaliation by Defendant, Kamryn Kahn and Desiray (last name unknown), and Defendant, Sophia (last name unknown).

26.     Defendant, Kamryn Kahn, Desiray (last name unknown), and Defendant, Sophia (last name unknown) continue to refer to Plaintiff using his Plaintiff, Austin Tinsman's dead name.

27.     Defendant, Kamryn Kahn, Desiray (last name unknown), and Defendant, Sophia (last name unknown) continue to refer to Plaintiff as the "he-she."

28.     Defendant, Kamryn Kahn, Desiray (last name unknown), and Defendant, Sophia (last name unknown) continue to denigrate Plaintiff due to Plaintiff sex and gender.

29.     Defendants discrimination and harassment of Plaintiff is due to Plaintiff's gender as they see Plaintiff as a female and because Plaintiff dresses like a male and wears his hair short like a male, Plaintiff, Austin Tinsman does not fit in with Defendants' ideas of what constitutes gender norms.  Accordingly, all of the severe and pervasive discrimination, harassment which created a hostile work environment for Plaintiff, Austin Tinsman is due to Plaintiff, Austin Tinsman's gender.

30.     Defendants have subjected Plaintiff to discrimination and harassment because Plaintiff, Austin Tinsman's clothes, manner of speech, and style does not coincide with the preconceived notions of gender norms that Defendants maintain.

31.     Whenever Plaintiff, Austin Tinsman reported discrimination and harassment in the workplace, Defendant, Kamryn Kahn confirms that Plaintiff, Austin Tinsman reported it to the correct parties.

32.     Defendant, Kamryn  Kahn assured Plaintiff, Austin Tinsman that he would investigate and implement prompt remedial measures.  All the while, Defendant, Kamryn Kahn worked to subvert vindication of Plaintiff, Austin Tinsman's rights.  Defendant, Kamryn Kahn buried Plaintiff's reports of discrimination and harassment in the workplace.

33.     Defendant, Kamryn Kahn subverted Defendants, stated anti-discrimination and harassment policies which had no force or effect and existed in name only.

34.     Defendant, Kamryn Kahn allowed Defendant, Sophia to continue referring to Plaintiff as the "he-she."

35.     At no time was Defendant, Sophia disciplined for her unlawful discriminatory and harassing conduct which was based upon Plaintiff, Austin Tinsman's sex and gender and subjected Plaintiff to severe and pervasive discrimination and harassment in the workplace because Plaintiff, Austin Tinsman did not comport with Defendants and Defendant, Sophia's (last name unknown) ideas of what a female employee should dress like, act like, talk like, look like.  Based on Defendants' prejudice and due to Plaintiff's sex and gender, Plaintiff was harassed , ridiculed and abused during his employment for Defendants.

36.     Defendants unlawfully terminated Plaintiff's employment due to Plaintiff's sex and gender and in retaliation for Plaintiff's reports of discrimination and harassment in the workplace.

37.     Defendants' stated reason for Plaintiff's termination was nothing but pretext to hide their discriminatory motives.

38.     Defendants' stated reason for Plaintiff's termination was nothing but pretext to hide their retaliation.

39.     Upon beginning his employment for Defendant, Plaintiff, Austin Tinsman was confused and did not know how all his co-workers were immediately aware that Austin Tinsman was transitioning from female to male.

40.     Prior to working for Defendants, Plaintiff, Austin Tinsman had not been subjected to a hostile environment where peers refused to treat Plaintiff, Austin with respect due to his sex and gender.

41.     At school, Plaintiff Austin Tinsman is registered as Austin Tinsman and no one calls Austin by his deadname, "Alayna." Plaintiff, Austin Tinsman's name appears on all rosters and documents as "Austin Tinsman." Plaintiff, Austin Tinsman's peers, teachers, and administrators at school all refer to Plaintiff, Austin Tinsman as Austin Tinsman.

42.     Accordingly, Plaintiff, Austin Tinsman was shocked when he arrived at work the first day and everyone called him, "Alayna."

43.     When Plaintiff, Austin Tinsman checked the shift schedule, he understood how his co-workers knew about his deadname.

44.     Defendant, Kamryn Kahn posted the shift schedule and listed Plaintiff, Austin Tinsman's name as "Alayna."

45.     Plaintiff, Austin Tinsman continued to complain about the shift schedule which was a document which hung on a wall for all employees to see. Plaintiff, Austin Tinsman complained that the shift schedule listed his deadname of "Alayna" throughout Plaintiff, Austin Tinsman's employment for Defendants.

46.     Despite numerous and continued complaints and reports and opposition to the shift schedule listing Plaintiff, Austin Tinsman's name as "Alayna" Defendants never changed

the shift schedule and every time a new shift schedule was posted, it continued to list Plaintiff,
Austin Tinsman's name as "Alayna."

47.     By posting the shift schedule with Plaintiff, Austin Tinsman's dead name,
Defendants announced to all employees that the discrimination, harassment, ridicule, and abuse
was sanctioned, condoned, permitted, and allowed by Defendants.

48.     This discrimination and harassment was due to Plaintiff, Austin Tinsman's sex
and gender and due to Defendants' aversion to Austin Tinsman's divergence to what Defendants
considered to be standard gender norms.

49.     Plaintiff, Austin Tinsman spent the first days of the first job that Plaintiff, Austin
Tinsman ever held explaining to co-workers that he was transitioning and preferred to be called
Austin.

50.     Almost everyone Austin Tinsman worked with was amendable to Austin's request
and happily treated Plaintiff, Austin Tinsman with respect and dignity.

51.     Several of Defendants' employees including several supervisors and Defendant,
Kamryn Kahn and Defendant Sophia (last name unknown) refused treat Plaintiff with dignity
and respect.

52.     Plaintiff was thus subjected to discrimination and harassment based upon
Plaintiff, sex and gender because Plaintiff's gender identify did not comport with the gender
norms which Defendants believed that Plaintiff should adhere to.  Defendants called Plaintiff,
Austin Tinsman the "he-she" throughout Plaintiff, Austin Tinsman's employment for
Defendants.  This discrimination and harassment was severe and pervasive and created a hostile
work environment for Plaintiff, Austin Tinsman.

53.    Defendants, including Defendant, Kamryn Kahn and Defendant Sophia (last name unknown) continued to harassment, ridicule and abuse Plaintiff, Austin Tinsman due to Plaintiff's sex and gender.

54.    On September 25, 2018, one week after beginning his employment with Defendants, Defendant, Sophia asked to see photographs of Austin "when Austin was a girl."

55.    Defendant, Sophia was Plaintiff, Austin Tinsman's supervisor.  Supervisor and Defendant, Sophia insulted Austin Tinsman, telling him, "you must have been beautiful with long hair."  Defendant, Sophia's implication was that Austin Tinsman was no longer beautiful.

56.    Defendant, Sophia announced, "I am not going to refer to you as "Austin."

57.    Defendant, Sophia stated, "you are Alayna, not Austin."

58.    Defendant, Sophia stated, "you are a girl, not a boy."

59.    Plaintiff, Austin Tinsman did not feel like arguing, said "OK," and walked away. It was Austin's first week of employment at his first job and he did not want to argue with a supervisor.

60.    A short while later, Sophia ordered Austin Tinsman to clean the lobby.

61.    While Austin was cleaning the lobby, Defendant, Sophia was sitting at a table with a group of male customers.

62.    Plaintiff, Austin Tinsman was within hearing distance and heard Defendant, Sophia telling the group of male customers, "that's not a guy, that's girl."

63.    It was apparent that Defendant, Sophia has ordered Austin to "clean the lobby" so that Austin would have to walk into the dining area where Sophia could show the group of boys who she had been telling them about.

64.    The conversation that Defendant, Sophia held about Austin continued and Austin Tinsman was within earshot.

65.     One of the male customers said, "why don't you date her then." The other male customer responded, "because she is ugly as shit."

66.     Plaintiff, Austin Tinsman replied, "I have a girlfriend thank you," and went back to cleaning and performing the duties of his employment.

67.     Plaintiff, Austin Tinsman finished his shift; however he was embarrassed, upset, mortified, and insulted by the discrimination and harassment to which he was subjected by a supervisor.

68.     The following day Plaintiff, Austin Tinsman's mother, Cheryl Messer traveled to Austin's place of employment to ask Defendant, Kamryn Kahn about the discrimination and harassment to which Defendants subjected the day before.

69.     There was a sit-down meeting at a table in the restaurant with Cheryl Messer, Willard Messer, Jenifer Rosa and Jen's husband Heraldo Rosa. These are Austin's mother, stepfather, sister and sister's husband, respectively.

70.     Store Supervisor and Defendant, Kamryn Kahn was also present.

71.     During this meeting Austin's family reported the discrimination and harassment that occurred on September 25, 2018.  At the time, Plaintiff Austin Tinsman was seventeen years old and a minor.

72.     Plaintiff, Austin Tinsman is eighteen (18) years old today.

73.     At the time of the meeting between Plaintiff, Austin Tinsman's family and Defendant, Kamryn Kahn, Plaintiff, Austin Tinsman was at school.

74.     Cheryl Messer brought an incident report which Austin prepared the night that Austin Tinsman was subjected to discrimination and harassment.  The incident report was handwritten by Austin Tinsman and signed and dated.  The incident report provided a detailed

account of the discrimination and harassment to which Austin Tinsman was subjected by a supervisor and Defendant, Sophia.

75.   Cheryl Messer provided this incident report to Defendant, Kamryn Kahn during the meeting on or around September 26, 2018.

76.   Defendant, Kamryn Kahn promised to contact corporate, stating, "she will probably be terminated."

77.   Defendant, Kamryn Kahn also promised to contact Cheryl Messer after reporting the incident to corporate.

78.   Defendant, Kamryn Kahn asked Ms. Messer's for Cheryl Messer's phone number and promised to call Ms. Messer back.  Ms. Messer never received a call back and Defendant, Kamryn Kahn did not do a single thing that he promised Ms. Messer during the September 26, 2018 meeting.

79.   Instead of contacting corporate and initiating an investigation into the reports of discrimination and harassment in the workplace, Defendant, Kamryn Kahn buried the report and refused to contact corporate or implement any corrective action.

80.   Defendant, Kamryn Kahn never called Ms. Messer back.

81.   When Defendant, Kamryn Kahn refused to call Ms. Messer, two days later, Ms. Messer called Defendant, Kamryn Kahn.

82.   During the call two days later, Defendant, Kamryn Kahn informed Ms. Messer, "I spoke to Sophie. She said nothing like happened and I believe her because she is a good manager."

83.   Defendant, Kamryn Kahn concluded that Plaintiff, Austin Tinsman was a liar and concocted the entire report.

84.     Ms. Messer asked Defendant Kamryn Kahn about the video cameras. Just two days earlier, Defendant, Kamryn Kahn informed Ms. Messer that all the cameras were fully operational.

85.     Defendant, Kamryn Kahn lied to Ms. Messer stating, "I checked the video, there is nothing there."

86.     No meaningful investigation was performed. Sophia was neither reprimanded nor disciplined. No corrective action was taken. The discrimination and harassment continued.

87.     Despite categorically denying that Plaintiff, Austin Tinsman was subjected to any discrimination and harassment, Defendant, Kamryn Kahn asked Sophia to apologize to Austin.

88.     Defendant, Sophia refused to even look at Austin and treated Plaintiff, Austin Tinsman with increased hostility and resentment thereafter.  Defendant, Sophia continued to refer to Plaintiff, Austin Tinsman as the "he-she" only now, Defendant, Sophia's discrimination and harassment was allowed, sanctioned, permitted and condoned by Defendants.

89.     Defendant, Kamryn Kahn's requirement that Sophia apologize to Austin did not comport with Defendant, Kamryn Kahn's position that Austin concocted the entire report. Defendant Kamryn Kahn supported Sophia's position that "nothing like that occurred," and still asked Sophia to apologize.

90.     Defendant, Kamryn Kahn informed Ms. Messer that Sophie claimed Austin showed Sophie pictures of when Austin was a girl. Defendant, Kamryn Kahn stated that there were two workers who agreed with this statement.

91.     At no time did Austin show Sophia pictures of when Austin was a girl. At no time did Defendant, Kamryn Kahn identify the two employees who he claimed supported Sophia's false account.

92.     These incidents of discrimination and harassment are indicative of the unprofessional atmosphere that Defendant, Kamryn Kahn authorizes at the restaurant.

93.     Another employee named Tabitha (last name unknown) was forced to quit because of the inappropriate conduct that occurred under the supervision of Defendant, Kamryn Kahn.

94.     Tabatha stated that it was a play-ground with ramped unprofessionalism.

95.     Pursuant to the reports of discrimination and harassment to which Austin Tinsman was subjected, Plaintiff, Austin Tinsman was subjected to a campaign of retaliation.

96.     Jobs that nobody wants were saved for Austin Tinsman such as cleaning the lobby and cleaning up after coworkers and other employees.

97.     Austin Tinsman's co-workers intentionally made a mess and waited and ordered Austin Tinsman to clean up their mess.  Plaintiff, Austin Tinsman arrived at work to find a mess, made by his coworkers including Defendant, Sophia Desiray waiting for him to clean.

98.     Plaintiff Austin Tinsman continued to be forced to work with Defendant, Sophie and was therefore continued to be subjected to Defendant, Sophie's discrimination and harassment in the workplace.  Said discrimination and harassment was severe and pervasive and created a hostile work environment for Plaintiff, Austin Tinsman.

99.     Defendant, Sophia treated Austin Tinsman differently than Austin Tinsman's similarly situated co-workers. Defendant, Sophia refuses to call Plaintiff, "Austin."

100.    Defendant, Sophia continues to refer to Austin as "Alayna."

101.    Plaintiff, Austin Tinsman was working at the front counter when Defendant, Sophia spoke to Defendant, Kamryn Kahn.  During their exchange, Defendant, Sophie referred to Austin as Alayna.  Defendant, Kamryn Kahn refused to reprimand or discipline Defendant, Sophia pursuant to her discriminatory comments.

102.    Both Defendant, Sophia and Defendant, Kamryn Kahn continued to exhibit discriminatory and harassing conduct toward Plaintiff, Austin Tinsman.

103.    At no time was Plaintiff, Austin Tinsman provided with an employee handbook.

104.    Defendants maintain no antidiscrimination policy.

105.    As a result of Defendants' conduct, Plaintiff was caused to sustain serious and permanent personal injuries, including permanent psychological injuries.

106.    As a result of Defendants' actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed and emotionally distressed.

107.    As a result of Defendants' conduct, Plaintiff was caused to sustain serious and permanent personal injuries, including permanent psychological injuries.

108.    As a result of Defendants' actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed and emotionally distressed.

109.    As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of salary, bonuses, benefits and other compensation.

110.    Plaintiff also suffered future pecuniary losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

111.    Plaintiff has further experienced severe emotional and physical distress.

112.    As Defendant's conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages.

113.    The above are just some examples, of some of the discrimination and retaliation to which Defendants subjected Plaintiff.

114.    Defendants conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, and Plaintiff demands Punitive Damages against all Defendants jointly and severally.

115.    Defendants have established a pattern and practice of discrimination and harassment through their actions.

116.    The discrimination and retaliation will continue beyond the date of this complaint, and as such, Plaintiff makes a claim for all continuing future harassment and retaliation.

117.    The above are just some of the examples of unlawful and discriminatory conduct to which Plaintiff was subjected.

118.    Defendants constructively discharged Plaintiff by making his working conditions so onerous, abusive, and intolerable that no person in Plaintiff's shoes would have been expected to continue working under such conditions and such that Plaintiff's resignation was void of free will.

119.    As a result of Defendants' conduct, Plaintiff was caused to sustain serious and permanent personal injuries, including permanent psychological injuries.

120.    Plaintiff suffers from anxiety, fear, and nightmares relating to Defendants and Defendants' employees conduct.  Plaintiff is unable to sleep or eat.

121.    As a result of Defendants' conduct, Plaintiff has been humiliated, degraded, victimized, embarrassed and emotionally distressed.

122.    As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer a loss of income, a loss of salary, bonuses, benefits and other compensation, which such employment entails.  Plaintiff has also suffered future pecuniary losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.  Plaintiff has further experienced severe emotional and physical distress.

123.    Plaintiff claims a continuous practice of discrimination and claims a continuing violation and makes all claims herein under the continuing violations doctrine.

124.    The Defendants have exhibited a pattern and practice of not only discrimination but also retaliation.

### FIRST CAUSE OF ACTION
### DISCRIMINATION UNDER TITLE VII
### HOSTILE WORK ENVIRONMENT AND DISPARATE TREATMENT
#### (against corporate Defendants only)

125.    Plaintiff, Austin Tinsman, hereby incorporates all allegations contained in paragraphs one (1) through one-hundred-twenty-four (124) as fully as if they were set forth at length.

126.    This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section(s) 2000e et seq., as amended, for relief based upon the unlawful employment practices of the above-named Defendants. Plaintiff complains of Defendants' violation of Title VII's prohibition against discrimination in employment based, in whole or in part, upon an employee's gender.

127.    SEC. 2000e-2. *[Section 703]* states as follows:

   (a) Employer practices
   It shall be an unlawful employment practice for an employer -
   (1) to fail or refuse to hire or to discharge any individual, or otherwise to
   discriminate against any individual with respect to his compensation, terms,
   conditions, or privileges of employment, because of such individual's race, color,
   religion, sex, or national origin; or
   (2) to limit, segregate, or classify his employees or applicants for employment in
   any way which would deprive or tend to deprive any individual of employment
   opportunities or otherwise adversely affect his status as an employee, because of
   such individual's race, color, religion, sex, or national origin.

128.    Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. §2000e et seq., by discriminating against Plaintiff because of Plaintiff's sex and gender and due to Defendants' preconceived notions of gender norms which Defendants believed that Plaintiff, Austin Tinsman did not conform to.

129.     Defendants subjected Plaintiff, Austin Tinsman to regular comments and conduct aimed at ridiculing Plaintiff, Austin Tinsman due to Plaintiff's sex and gender.  Plaintiff was called the "he-she" during his employment for Defendants.  These comments and this conduct was severe in nature and it occurred on a daily basis when Plaintiff, Austin Tinsman worked.  Accordingly, Defendants conduct was also pervasive and created a hostile work environment for Plaintiff, Austin Tinsman.

130.     Ultimately, Plaintiff, Austin Tinsman was terminated unlawfully in violation of Title VII.  Plaintiff, Austin Tinsman's termination was an adverse employment action that occurred under an inference of gender and sex discrimination.  Any proffered reason Defendants can provide to justify Plaintiff's termination is nothing but pretext.

## SECOND CAUSE OF ACTION
## RETALIATION UNDER TITLE VII
### (against corporate Defendants only)

131.     Plaintiff, Austin Tinsman, hereby incorporates all allegations contained in paragraphs one (1) through one-hundred-thirty (130) as fully as if they were set forth at length.

132.     Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-3(a) provides that it shall be an unlawful employment practice for an employer: "(1) to…discriminate against any of his employees…because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted, or participated in any matter in an investigation, proceeding, or hearing under this subchapter."

133.     Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. § 2000e *et seq.* by retaliating against Plaintiff with respect to the terms, conditions, and/or privileges of his employment because of his opposition to and reporting of the unlawful employment practices of Defendants.

134.    Plaintiff Austin Tinsman repeatedly reported and opposed Defendants unlawful discrimination and harassment in the workplace.  During Plaintiff's employment for Defendants, Plaintiff, Austin Tinsman initiated vindication of his rights by beginning the process of exhausting his administrative remedies.  Plaintiff Austin Tinsman was terminated shortly thereafter in direct retaliation of Plaintiff's decision to vindicate his rights.

### THIRD CAUSE OF ACTION
### DISCRIMINATION UNDER
### PHILADELPHIA CITY ADMINISTRATIVE ORDINANCE
**(against all named Defendants)**

135.    Plaintiff, Austin Tinsman, hereby incorporates all allegations contained in paragraphs one (1) through one-hundred-thirty-four (134) as fully as if they were set forth at length.

136.    The Philadelphia Fair Practices Ordinance § 9-1103(1) provides that "It shall be an unlawful discriminatory practice:  "It shall be an unlawful employment practice to deny or interfere with the employment opportunities of an individual based upon his or her race, ethnicity, color, sex (including pregnancy, childbirth, or a related medical condition), sexual orientation, gender identity, religion, national origin, ancestry, age, disability, marital status, familial status, genetic information, or domestic or sexual violence victim status, including, but not limited to, the following: (a) For any employer to refuse to hire, discharge, or otherwise discriminate against any individual, with respect to tenure, promotions, terms, conditions or privileges of employment or with respect to any matter directly or indirectly related to employment."

137.    Defendants engaged in an unlawful discriminatory practice in violation of Philadelphia Fair Practices Ordinance § 9-1103(1) by creating and maintaining

discriminatory working conditions, and otherwise discriminating against Plaintiff because of

Plaintiff's sex and gender and due to Plaintiff's status as a transitioning female to male.

138.    Plaintiff hereby makes a claim against Defendants under all of the applicable

paragraphs of Philadelphia Fair Practices Ordinance Chapter 9-1100.

139.    Plaintiff, Austin Tinsman claims disparate treatment and hostile work

environment as described above pursuant to the Philadelphia Fair Practices Ordinance.

## FOURTH CAUSE OF ACTION
## RETALIATION UNDER THE
## PHILADELPHIA CITY ADMINISTRATIVE ORDINANCE
### (against all named Defendants)

140.    Plaintiff, Austin Tinsman, hereby incorporates all allegations contained in

paragraphs one (1) through one-hundred-thirty-nine (139) as fully as if they were set forth at

length.

141.    The Philadelphia Fair Practices Ordinance § 9-1103(1)(g) provides that it shall be

unlawful discriminatory practice: " For any person to harass, threaten, harm, damage, or

otherwise penalize, retaliate or discriminate in any manner against any person because he, she or

it has complied with the provisions of this Chapter, exercised his, her or its rights under this

Chapter, enjoyed the benefits of this Chapter, or made a charge, testified or assisted in any

manner in any investigation, proceeding or hearing hereunder."

142.    Defendants engaged in an unlawful discriminatory practice in violation of

Philadelphia Fair Practices Ordinance § 9-1103(1)(g) by discriminating against the Plaintiff

because of Plaintiff's opposition to the unlawful employment practices of Plaintiff's employer.

### FIFTH CAUSE OF ACTION
### DISCRIMINATION UNDER
### PHILADELPHIA CITY ADMINISTRATIVE ORDINANCE
### (against all named Defendants)

143.     Plaintiff, Austin Tinsman, hereby incorporates all allegations contained in
paragraphs one (1) through one-hundred-forty-two (142) as fully as if they were set forth at
length.

144.     The Philadelphia Fair Practices Ordinance § 9-1103(1)(h) provides that it shall be
unlawful discriminatory practice: "For any person to aid, abet, incite, induce, compel or coerce
the doing of any unlawful employment practice or to obstruct or prevent any person from
complying with the provisions of this Section or any order issued hereunder or to attempt
directly or indirectly to commit any act declared by this Section to be an unlawful employment
practice."

145.     Defendants engaged in an unlawful discriminatory practice in violation of
Philadelphia Fair Practices Ordinance § 9-1103(1)(h) by aiding, abetting, inciting, compelling
and coercing the above discriminatory, unlawful and retaliatory conduct.

### SIXTH CAUSE OF ACTION
### DISCRIMINATION UNDER STATE LAW
### (against corporate Defendants only)

146.     Plaintiff, Austin Tinsman, hereby incorporates all allegations contained in
paragraphs one (1) through one-hundred-forty-five (145) as fully as if they were set forth at
length.

147.     The PHRA § 955 provides that it shall be an unlawful discriminatory practice:

> "(a) For any employer because of the race, color, religious creed, ancestry,
> age, sex, national origin or non-job related handicap or disability or the use
> of a guide or support animal because of the blindness, deafness or physical
> handicap of any individual or independent contractor, to refuse to hire or
> employ or contract with, or to bar or to discharge from employment such
> individual or independent contractor, or to otherwise discriminate against
> such individual or independent contractor with respect to compensation,
> hire, tenure, terms, conditions or privileges of employment or contract, if

the individual or independent contractor is the best able and most competent to perform the services required."

148.    Defendants engaged in an unlawful discriminatory practice by discriminating against the Plaintiff because of Plaintiff's sex and gender.

149.    Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of the PHRA § 955.

### SEVENTH CAUSE OF ACTION
### <u>RETALIATION UNDER STATE LAW</u>
### (against all Defendants)

150.    Plaintiff, Austin Tinsman, hereby incorporates all allegations contained in paragraphs one (1) through one-hundred-forty-nine (149) as fully as if they were set forth at length.

151.    PHRA § 955(d) provides that it shall be an unlawful discriminatory practice: " For any person, employer, employment agency or labor organization to discriminate in any manner against any individual because such individual has opposed any practice forbidden by this act, or because such individual has made a charge, testified or assisted, in any manner, in any investigation, proceeding or hearing under this act."

152.    Defendants engaged in an unlawful discriminatory practice by discharging, retaliating, and otherwise discriminating against the Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Plaintiff's employer.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally,

in an amount to be determined at the time of trial plus interest, punitive damages, liquidated

damages, statutory damages, attorneys' fees, costs, and disbursements of action; and for such

other relief as the Court deems just and proper.


                                        **DEREK SMITH LAW GROUP, PLLC**

By: _____

                                    Seth D. Carson, Esquire
                                    1835 Market Street, Suite 2950
                                    Philadelphia, Pennsylvania 19103
                                    Phone: 215.391.4790
                                    Email: seth@dereksmithlaw.com

DATED: October 8, 2019